UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Frederick McKinney,<br><br>Plaintiff,<br><br>v.<br><br>Townsquare Media, Inc.,<br><br>Defendant. | Case No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Frederick McKinney ("Plaintiff"), by and through his undersigned counsel, for his Complaint against defendant Townsquare Media, Inc. ("Defendant") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and for the provision and distribution of false copyright management information under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

2. Plaintiff is a professional storm chaser, videographer, and photographer. He created a video documenting a violent tornado near Hawley, Texas and his rescue of a family injured by that tornado.

3. Defendant owns and operates a network of radio station websites. Without a license or Plaintiff's permission, Defendant copied still frames from Plaintiff's video, combined them into a composite image overlaid with a red "WARNING" graphic, stored that image on its own server, and displayed it as the featured image of an article published on at least eight of its station websites. The article identifies Plaintiff by name, yet Defendant credited the image to "X/Canva."

**PARTIES**

4. Plaintiff is an individual who resides in Butler County, Nebraska.

5. Defendant is a Delaware corporation with a principal place of business at 4 Manhattanville Road, Suite 107, Purchase, in Westchester County, New York.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over the federal copyright infringement and Digital Millennium Copyright Act claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. §



SLG SANDERS · LAW GROUP ·

1331.

7. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Business

9. Plaintiff is a professional storm chaser, videographer, and photographer whose work focuses on capturing compelling footage and images of severe weather and other newsworthy events, people, and locations.

10. Through years of experience behind the camera, Plaintiff has developed a distinctive style and has created an extensive portfolio of original videos and photographs that have been published and distributed through various media channels.

11. Storm chasing is dangerous, demanding, and expensive work. To capture footage of a tornado, Plaintiff must research and forecast severe weather, often days in advance, and continuously monitor radar, satellite, and forecast models to determine where a storm is likely to form and how it will move.

12. Plaintiff routinely spends long hours on the road, frequently driving hundreds of miles over the course of a single storm system, and must position himself close enough to a storm to capture usable footage while navigating flying debris, large hail, lightning, flooding, damaged roads, and rapidly changing conditions. This work places Plaintiff's life at risk.

13. Storm chasing also requires substantial investment in professional camera and stabilization equipment, mounting and power systems, mobile data and communications equipment, a suitable vehicle and its repair and maintenance, fuel, and lodging, as well as significant post-production effort.

14. Footage of a tornado cannot be recreated or reshot. Its value lies in its having been captured at a specific place and moment, often at great personal risk, and that value is greatest in the period immediately following the event it depicts.

15. As the creator and copyright owner of his works, Plaintiff relies upon the licensing of his videos and photographs as an important source of income. Plaintiff carefully controls the

reproduction, display, distribution, and licensing of his copyrighted works, and unauthorized use of his works diminishes the value of his licensing market and undermines his ability to profit from his creative efforts.

16. Plaintiff's works have been used in connection with news reporting, editorial content, and other commercial and informational publications, and Plaintiff has established a reputation for producing high-quality visual content that is sought after by publishers, media organizations, and audiences alike.

**B. Plaintiff's Copyright Ownership**

17. On May 2, 2024, Plaintiff first published a video titled "The Hawley, Texas Tornado Rescue" (the "Video") on his YouTube channel at https://www.youtube.com/watch?v=7kspTe-x_V4. The Video depicts a violent tornado near Hawley, Texas and Plaintiff's rescue of a family injured by that tornado. A copy of a still image from the Video is attached hereto as part of Exhibit 1.

18. On June 9, 2024, the Video was registered by the United States Copyright Office (the "USCO") under Registration No. PA 2-479-373, within three months of its first publication.

19. Plaintiff is the author and sole owner of the copyright in the Video.

20. In creating the Video, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment used to capture the Video and made each and every artistic determination necessary for the creation of the work.

21. The Video is an original, creative work in which Plaintiff owns a protectable copyright interest.

22. Plaintiff created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution, including through licensing to media organizations.

**C. Defendant's Infringing Activity**

23. Defendant is a media company that owns and operates local radio stations throughout the United States, together with a website for each station that publishes news, weather, entertainment, and other content.

24. Defendant is a publicly traded company (NYSE: TSQ) that describes itself as "a community-focused digital and broadcast media and digital marketing solutions company." According to its most recent annual report on Form 10-K, as of March 9, 2026, Defendant owned



SLG SANDERS · LAW GROUP ·

and operated 340 radio stations in 74 local markets, together with a portfolio of more than 400 local news and entertainment websites and mobile apps.

25. Defendant's websites are central to how it makes money. Defendant generates revenue by selling advertising displayed to the audiences its websites attract, connecting local, regional, and national advertisers to consumers across its portfolio of websites and apps. According to its Form 10-K, Defendant's digital revenue was $236.0 million in 2025, comprising 55% of its total net revenue. Visual content such as photographs and video draws readers to Defendant's articles and, in turn, increases the advertising inventory Defendant can sell.

26. Defendant owns and operates, and is responsible for the content of, the websites at mix941kmxj.com, klaq.com, knue.com, 1025kiss.com, 1063thebuzz.com, newstalk1290.com, 1023thebullfm.com, and 1073kissfmtexas.com (collectively, the "Websites").

27. The Websites are a key component of Defendant's commercial enterprise. The Websites are monetized in that they contain paid advertisements and solicit advertisers, promote Defendant's mobile applications, and drive listeners to Defendant's radio broadcasts and promotions, and, upon information and belief, Defendant profits from these activities.

28. On or about May 6, 2024, four days after Plaintiff first published the Video, Defendant published an article titled "Storm Chaser Saves Injured Family From Massive Texas Tornado" (the "Article") on klaq.com, knue.com, 1063thebuzz.com, newstalk1290.com, 1023thebullfm.com, and 1073kissfmtexas.com.

29. On or about June 2, 2024, Defendant published the Article on mix941kmxj.com, and on or about July 13, 2024, Defendant published the Article on 1025kiss.com.

30. The featured image of the Article is a composite image made from still frames copied from the Video, including a frame depicting Plaintiff's rescue of an injured family member and a frame depicting the tornado, with a circular enlargement of the tornado, overlaid with a red stamp reading "WARNING" and the words "Viewer Discretion Advised" (the "Infringing Image").

31. Defendant copied and stored the Infringing Image on its own server, at https://townsquare.media/site/174/files/2024/05/attachment-18.jpg, and displayed the Infringing Image from that server as the featured image of the Article on each of the Websites (collectively, the "Infringements"). Defendant did not display the Infringing Image by linking to or embedding any post.



SLG SANDERS LAW GROUP

32. Defendant did not obtain the Infringing Image through any embedding feature of a social media or video-hosting platform. To the extent such platforms' terms of service permit third parties to display content at all, they permit display only through the platform's own embedded player, and do not authorize a third party to copy frames from a video, store them on its own server, and display them outside the platform.

33. Copies of screengrabs of the Article on each of the Websites, including archived captures from the time of publication, identifying the date of each Article and the specific URLs, are attached hereto as Exhibit 2.

34. The Article identifies Plaintiff by name. It is captioned "The Heroic Tale of Storm Chaser Freddy McKinney: Rescuing a Family from the Clutches of a Massive Tornado," introduces Plaintiff to readers by name, and recounts the very rescue that Plaintiff recorded in the Video.

35. Despite knowing that Plaintiff was the storm chaser who recorded the footage, Defendant credited the Infringing Image to "X/Canva," neither of which created the Video or holds any rights in it. Defendant did not credit Plaintiff as the author of the Infringing Image, did not contact Plaintiff, and did not seek or obtain a license.

36. Upon information and belief, attributing footage captured by identifiable storm chasers to a social media platform and to "Canva," a graphic-design tool, is a routine practice on Defendant's station websites, and such credits do not identify the author or any licensor of the footage.

37. Defendant used the Infringing Image for the same purpose for which Plaintiff created and licenses the Video: to show its audience the tornado and the rescue that Plaintiff captured.

38. The Infringements are copies of the Video, or portions thereof, that were copied, modified, and displayed by Defendant on the Websites without license or permission, thereby infringing on Plaintiff's copyright in and to the Video.

39. The Copyright Act expressly grants the owner of the copyright in an audiovisual work the exclusive right to display "the individual images" of that work publicly. 17 U.S.C. § 106(5).

40. Each of the Infringements includes a URL ("Uniform Resource Locator") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be

communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

41. Plaintiff did not discover the Infringements earlier than December 15, 2025.

42. On June 19, 2026, Plaintiff, through counsel, notified Defendant in writing of the Infringements on each of the Websites. Only after receiving that notice did Defendant remove the Infringing Image from the Websites.

43. To date, Defendant has not compensated Plaintiff for its use of the Video.

44. Upon information and belief, Defendant is a sophisticated media company that owns or operates a large portfolio of radio stations, websites, and social media accounts, and has advanced operational expertise in an industry where copyright is prevalent.

45. Upon information and belief, Defendant's staff have significant experience in copyright matters due to the company's background as a large media company and are familiar with journalistic practices, including the need to ensure that images and videos used on Defendant's websites have been properly licensed.

46. Defendant understands the value of copyright and the necessity of licensing. In its annual report, Defendant states that it "own[s] or ha[s] the rights to copyrights that protect the content of [its] products" and that it "pay[s] royalties to song composers and publishers through four performing rights organizations."

47. The Terms of Use governing Defendant's websites declare that "Townsquare owns and retains all proprietary rights in the Websites" and provide that visitors "may not copy, modify, publish, transmit, distribute, perform, display, or sell" that content. Defendant thus demands from others the very respect for copyright that it denied Plaintiff.

48. Defendant's unlicensed use of photographs and videos on its websites is not an isolated occurrence. Since 2016, Defendant has been named as a defendant in at least fifty-one copyright infringement actions in this District arising from its unlicensed use of photographs and videos on websites it owns and operates, including:

(a) *Sadowski v. Townsquare Media, Inc.*, No. 1:16-cv-06408 (S.D.N.Y. filed Aug. 11, 2016);

(b) *Tabak v. Townsquare Media, Inc.*, No. 1:16-cv-07800 (S.D.N.Y. filed Oct. 6, 2016);

(c) *Parisienne v. Townsquare Media, Inc.*, No. 1:17-cv-00500 (S.D.N.Y. filed Jan. 23, 2017);

SLG SANDERS · LAW GROUP ·

(d) *Zlozower v. Townsquare Media, Inc.*, No. 1:17-cv-04161 (S.D.N.Y. filed June 3, 2017);

(e) *Sands v. Townsquare Media, Inc.*, No. 1:17-cv-07259 (S.D.N.Y. filed Sept. 24, 2017);

(f) *Mazza v. Townsquare Media, Inc.*, No. 1:18-cv-01992 (S.D.N.Y. filed Mar. 6, 2018);

(g) *Fowler v. Townsquare Media, Inc.*, No. 1:18-cv-03794 (S.D.N.Y. filed Apr. 29, 2018);

(h) *Zlozower v. Townsquare Media, Inc.*, No. 1:18-cv-06071 (S.D.N.Y. filed July 3, 2018);

(i) *Global Interactive Media, Inc. v. Townsquare Media, Inc.*, No. 1:18-cv-06880 (S.D.N.Y. filed July 31, 2018);

(j) *McGlynn v. Townsquare Media, Inc.*, No. 1:18-cv-08875 (S.D.N.Y. filed Sept. 27, 2018);

(k) *Vollweiler v. Townsquare Media, Inc.*, No. 1:18-cv-10274 (S.D.N.Y. filed Nov. 5, 2018);

(l) *McDermott v. Townsquare Media, Inc.*, No. 1:18-cv-11452 (S.D.N.Y. filed Dec. 7, 2018);

(m) *Hermann v. Townsquare Media, Inc.*, No. 1:18-cv-12088 (S.D.N.Y. filed Dec. 20, 2018);

(n) *Hirsch v. Townsquare Media, Inc.*, No. 1:19-cv-01444 (S.D.N.Y. filed Feb. 14, 2019);

(o) *Chevrestt v. Townsquare Media, Inc.*, No. 1:19-cv-01993 (S.D.N.Y. filed Mar. 3, 2019);

(p) *Zlozower v. Townsquare Media, Inc.*, No. 1:19-cv-03395 (S.D.N.Y. filed Apr. 16, 2019);

(q) *Walsh v. Townsquare Media, Inc.*, No. 1:19-cv-04958 (S.D.N.Y. filed May 28, 2019);

(r) *Malluk v. Townsquare Media, Inc.*, No. 1:19-cv-06461 (S.D.N.Y. filed July 11, 2019);

(s) *Schiffman v. Townsquare Media, Inc.*, No. 1:19-cv-10467 (S.D.N.Y. filed Nov. 12, 2019);

(t) *Soler v. Townsquare Media, Inc.*, No. 1:20-cv-01119 (S.D.N.Y. filed Feb. 9, 2020);

(u) *Fedun v. Townsquare Media, Inc.*, No. 1:20-cv-02344 (S.D.N.Y. filed Mar. 17, 2020);

(v) *Shihab v. Townsquare Media, Inc.*, No. 7:21-cv-00148 (S.D.N.Y. filed Jan. 7, 2021);

(w) *Charming Beats LLC v. BuzzFeed, Inc.*, No. 1:22-cv-02202 (S.D.N.Y. filed Mar.

SLG SANDERS LAW GROUP

17, 2022) (naming Defendant as a co-defendant);

(x) *Estate of Modu v. Townsquare Media, Inc.*, No. 1:22-cv-05311 (S.D.N.Y. filed June 23, 2022);

(y) *Eclipse Sportswire v. Townsquare Media, Inc.*, No. 7:23-cv-06375 (S.D.N.Y. filed July 24, 2023);

(z) *Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:23-cv-09877 (S.D.N.Y. filed Nov. 8, 2023);

(aa) *Shook v. Townsquare Media, Inc.*, No. 1:24-cv-01764 (S.D.N.Y. filed Mar. 7, 2024);

(bb) *Borel v. Townsquare Media, Inc.*, No. 1:24-cv-02201 (S.D.N.Y. filed Mar. 24, 2024);

(cc) *Van Sise v. Townsquare Media, Inc.*, No. 7:24-cv-03836 (S.D.N.Y. filed May 17, 2024);

(dd) *Yang v. Townsquare Media, Inc.*, No. 1:24-cv-03841 (S.D.N.Y. filed May 17, 2024);

(ee) *Vila v. Townsquare Media, Inc.*, No. 7:24-cv-03845 (S.D.N.Y. filed May 17, 2024);

(ff) *Santiago v. Townsquare Media, Inc.*, No. 1:24-cv-03851 (S.D.N.Y. filed May 17, 2024);

(gg) *Neil Zlozower Photography Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03853 (S.D.N.Y. filed May 17, 2024);

(hh) *Stop Making Media, Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03855 (S.D.N.Y. filed May 17, 2024);

(ii) *Chosen Figure LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03873 (S.D.N.Y. filed May 20, 2024);

(jj) *Hames v. Townsquare Media, Inc.*, No. 1:24-cv-03875 (S.D.N.Y. filed May 20, 2024);

(kk) *Nick Kozak Photography LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03876 (S.D.N.Y. filed May 20, 2024);

(ll) *Ong v. Townsquare Media, Inc.*, No. 1:24-cv-03877 (S.D.N.Y. filed May 20, 2024);

(mm) *McDermott v. Townsquare Media, Inc.*, No. 1:24-cv-03883 (S.D.N.Y. filed May 20, 2024);

(nn) *Polaris Images Corp. v. Townsquare Media, Inc.*, No. 1:24-cv-04210 (S.D.N.Y. filed June 3, 2024);

(oo) *Richardson v. Townsquare Media, Inc.*, No. 1:24-cv-04217 (S.D.N.Y. filed June 3, 2024), *aff'd in part, vacated in part, and remanded*, 174 F.4th 299 (2d Cir. 2026);

(pp) *Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:24-cv-04222 (S.D.N.Y. filed June 3, 2024);

(qq) *Malluk v. Townsquare Media, Inc.*, No. 1:24-cv-04321 (S.D.N.Y. filed June 6,

SLG SANDERS · LAW GROUP ·

2024);

(rr) *Fish v. Townsquare Media, Inc.*, No. 1:24-cv-05610 (S.D.N.Y. filed July 25, 2024);

(ss) *Michael Grecco Productions, Inc. v. Townsquare Media, Inc.*, No. 7:24-cv-07584 (S.D.N.Y. filed Oct. 7, 2024);

(tt) *Martinka v. Townsquare Media, Inc.*, No. 7:24-cv-07797 (S.D.N.Y. filed Oct. 15, 2024);

(uu) *Moses v. Townsquare Media, Inc.*, No. 7:24-cv-07798 (S.D.N.Y. filed Oct. 15, 2024);

(vv) *Global Weather Productions LLC v. Townsquare Media, Inc.*, No. 7:25-cv-06059 (S.D.N.Y. filed July 23, 2025);

(ww) *Andy Ryan Photographer, LLC v. Townsquare Media, Inc.*, No. 1:25-cv-06542 (S.D.N.Y. filed Aug. 8, 2025);

(xx) *August Image, LLC v. Townsquare Media, Inc.*, No. 7:25-cv-09341 (S.D.N.Y. filed Nov. 7, 2025); and

(yy) *Miller v. Townsquare Media, Inc.*, No. 1:26-cv-06038 (S.D.N.Y. filed July 16, 2026).

SLG SANDERS · LAW GROUP ·

49. Each of those actions put Defendant on notice that copying photographs and videos found online for use on its websites without a license infringes the copyrights in those works. Defendant nonetheless continued to display the Infringing Image and expanded its use of it: by the time Defendant republished the Article on mix941kmxj.com on or about June 2, 2024, at least thirty-nine of those actions had been filed against it, and by the time it republished the Article on 1025kiss.com on or about July 13, 2024, at least forty-three had been filed.

50. Upon information and belief, Defendant takes an active and pervasive role in the content posted on its Websites, including, but not limited to, selecting, copying, editing, posting, and displaying images and videos, including Plaintiff's Video.

51. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

52. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws, or at a minimum in reckless disregard of Plaintiff's rights.

53. Despite the many actions identified above, upon information and belief, Defendant

has not adopted any effective practice for determining whether it holds a license before publishing photographs and video footage that its staff find online and instead continues to treat such content as free for the taking.

54. Upon information and belief, Defendant had complete control over and actively reviewed and monitored the content posted on the Websites and had the legal right and ability to control and limit the infringing activities on the Websites.

55. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements, in that the Infringements increased traffic to the Websites and, in turn, caused Defendant to realize an increase in its advertising revenues.

56. Upon information and belief, a large number of people have viewed the Infringing Image on the Websites.

57. Defendant's use of the Video harmed the actual market for the Video, and Defendant's use of the Video, if widespread, would harm Plaintiff's potential market for the Video.

58. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT
## (Direct Copyright Infringement, 17 U.S.C. § 501 et seq.)

59. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

60. The Video is an original, creative work in which Plaintiff owns a valid copyright.

61. The Video is properly registered with the USCO, and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

62. Plaintiff has not granted Defendant a license or the right to use the Video, or any portion thereof, in any manner, nor has Plaintiff assigned any of his exclusive rights in the copyright to Defendant.

63. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. § 106, Defendant improperly and illegally reproduced, prepared a derivative work from, and publicly displayed the Video, thereby violating Plaintiff's exclusive rights in his copyright.

64. Defendant's reproduction and display of the Video constitute willful copyright infringement.

65. Defendant's willfulness is shown by, among other things, its identification of



SLG SANDERS · LAW GROUP ·

Plaintiff by name in the very Article it illustrated with his footage; its attribution of that footage to "X/Canva," which had no rights in it; its republication of the Article on two additional Websites after more than three dozen copyright infringement actions had been filed against it; and its continued display of the Infringing Image until Plaintiff's counsel intervened.

66. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

67. As a result of Defendant's violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendant.

68. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

SLG SANDERS LAW GROUP

**SECOND COUNT**
**(False Copyright Management Information, 17 U.S.C. § 1202(a))**

69. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

70. The credit "X/Canva" that Defendant placed with the Infringing Image on each of the Websites is copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202(c), because it was conveyed in connection with the Infringing Image and purports to identify the author or copyright owner of the image.

71. That CMI is false. Neither X nor Canva created the Video or the Infringing Image, holds any rights in them, or licensed them to Defendant. Plaintiff is the author and sole owner of the copyright in the Video. Canva operates a library of stock photographs and video that it licenses to its users, so a credit to "Canva" represents to readers that the image is licensed stock content.

72. Defendant provided and distributed the false CMI knowingly. The Article identifies Plaintiff by name as the storm chaser who recorded the footage and recounts the very rescue that Plaintiff recorded in the Video. Defendant therefore knew that Plaintiff, and not X or Canva, was the author of the footage from which it made the Infringing Image.

73. Defendant provided and distributed the false CMI with the intent to induce, enable, facilitate, or conceal its infringement of Plaintiff's copyright, including by presenting its unlicensed use of the Video as the use of freely available social media content or licensed stock content, and by diverting attention from Plaintiff as the owner of the rights in the footage.

74. Defendant provided and distributed the false CMI on each of the eight Websites, and each such provision and distribution constitutes a separate violation of 17 U.S.C. § 1202(a).

75. As a result of Defendant's violations of 17 U.S.C. § 1202, Plaintiff is entitled to recover his actual damages and any additional profits of Defendant pursuant to 17 U.S.C. § 1203(c)(2) or, at Plaintiff's election, statutory damages of not less than $2,500 and not more than $25,000 for each violation pursuant to 17 U.S.C. § 1203(c)(3)(B).

76. Plaintiff is further entitled to recover his costs and reasonable attorney's fees pursuant to 17 U.S.C. § 1203(b)(4) and (5), and to injunctive relief pursuant to 17 U.S.C. § 1203(b)(1).

## JURY DEMAND

77. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment finding that Defendant has infringed on Plaintiff's rights to the Video in violation of 17 U.S.C. § 501 et seq. and violated 17 U.S.C. § 1202, and award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Video by copying, modifying, and displaying it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an award of actual damages and Defendant's profits or, at Plaintiff's election, statutory damages for each violation of 17 U.S.C. § 1202 pursuant to 17 U.S.C. § 1203(c);

d. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

e. for costs of litigation and reasonable attorney's fees against Defendant pursuant to

17 U.S.C. §§ 505 and 1203(b);

f. for pre-judgment interest as permitted by law; and

g. for any other relief the Court deems just and proper.

DATED: November 19, 2026

**SANDERS LAW GROUP**

By: */s/ Craig Sanders*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 138922

*Attorneys for Plaintiff*

SLG SANDERS LAW GROUP